UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JESUS PALACIOS, et al.,

Plaintiffs,

v.

PENNY NEWMAN GRAIN, INC., et al.,

Defendants.

No. 1:14-cv-01804-KJM-SAB

ORDER

This matter is before the court on the unopposed motion by Jesus Palacios ("plaintiff" or "class representative") for an order preliminarily approving a class settlement and conditionally certifying the settlement class. (ECF No. 24.)  The court held a hearing on the matter on May 22, 2015.  R. Erandi Zamora and Della Barnett appeared for plaintiffs; Christina Tillman appeared for defendant Penny Newman Grain, Inc. (Penny Newman); and Paul Bauer appeared for Universal Ag Services, Inc. (Universal Ag).  As explained below, the court GRANTS plaintiffs' motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit arises out of defendants' alleged failure to properly compensate plaintiffs, to properly provide meal and rest periods, and to properly provide timely

/////

1

1    and accurate wage statements.  (*See generally* Pls.' First Am. Compl., ECF No. 1.)  Plaintiffs also

2    allege defendants did not indemnify them for work-related expenses as required.  (*See id.*)

3            Defendant Penny Newman Grain, Inc. (Penny Newman) is an international

4    merchant for grains and feed byproducts.  (ECF No. 24-1 at 3.)  The other defendant, Universal

5    Ag Services, Inc. (Universal Ag), owned by defendant Juan Zavala, recruited workers for Penny

6    Newman.  (*Id.*)  The class consists of individuals who were recruited by Universal Ag and who

7    worked at facilities owned by Penny Newman in California.  (*Id.* at 1.)  Plaintiffs contend the

8    class members worked as employees for all defendants; defendants, hence, are jointly and

9    severally liable for the alleged violations.  (*Id.* at 3.)

10           Plaintiffs commenced this action in the Fresno County Superior Court on August

11   11, 2014.  (ECF No. 1 ¶ 1)  Defendants removed the case to this district on November 18, 2014,

12   invoking the court's federal-question jurisdiction.  (*Id.* ¶ 6.)  On January 15, 2015, the parties

13   attended a full-day mediation with an experienced mediator, Jeffrey A. Ross.  (ECF No. 24-1 at 4;

14   Barnett Decl. ¶ 9, ECF No. 24-2.)  The parties reached a settlement after negotiating at arms-

15   length.  (ECF No. 24-1 at 4.)  The agreement defines the class as:

16
17           [T]he non-exempt employees of Defendant Universal Ag Services
             and Juan Zavala who worked at the facilities operated by Defendant
             Penny Newman in California at any point in time from August 10,
18           2010 to January 15, 2015, and who do not properly and timely opt
             out of the Settlement Class by having requested exclusion.
19   (*Id.*)

20           Under the agreement, Penny Newman will make a gross payment of $600,000

21   (Settlement Amount), to be placed in a trust account and to be allocated as follows:

22           (1) An amount not exceeding $30,000 to be paid to the claims administrator

23                   Gilardi & Co., LLC;

24           (2) The amount of $10,000 to be paid to each of the five named plaintiffs as an

25                   enhancement payment;

26           (3) The amount of $150,000 to be paid to class counsel as attorneys' fees; and

27

28
                                               2

(4) An amount not exceeding $10,000 to be paid to class counsel as litigation

costs.

(*Id.* at 5.)

The Net Settlement Amount, the amount remaining after the distributions set forth above, will be allocated as follows:

(1) 20 percent of the Net Settlement Amount will be allocated to the settlement of

class claims for unpaid wages;

(2) 80 percent of the Net Settlement Amount will be allocated to the settlement of

class claims for statutory penalties and interest, of which $10,000 will be

allocated to the settlement of the claims brought under California's Private

Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698–2699; and

(3) Any unclaimed funds will be distributed to Central California Legal Services

(CCLS), a nonprofit legal services program serving the Central Valley, as a *cy*

*pres* recipient.

(*Id.* at 5–6.)

Finally, Universal Ag has agreed to separately cover the employers' share of payroll taxes on the amounts paid as wages.  (Barnett Decl. ¶ 4, ECF No. 24-2.)

Plaintiffs now move for an order (1) approving the class Settlement Agreement; (2) conditionally certifying the class and appointing plaintiffs as the class representatives with plaintiffs' counsel as class counsel; (3) approving the form and method of service; (4) approving the procedure for class members to submit claims, opt-out or object; and (5) setting a hearing date on a final settlement approval.  (ECF No. 24.)  As noted above,  plaintiffs' motion is unopposed. (*Id.*)

II.     STANDARDS AND PROCESS FOR CLASS SETTLEMENT APPROVAL

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members."  *In re Bluetooth Headset Prods. Liab. Litig.* (*Bluetooth*), 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks omitted).  To protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure

3

permits a class action to be settled "only with the court's approval" "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate."  Moreover, if "the settlement agreement is negotiated prior to formal class certification," then "there is an even greater potential for a breach of fiduciary duty owed the class." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (internal alteration and quotation marks omitted) (quoting *Bluetooth*, 654 F.3d at 946).  "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Bluetooth*, 654 F.3d at 946.  "Judicial review must be exacting and thorough." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.61 (2004).

"Review of a proposed class action settlement usually involves two hearings." *Id.* § 21.632.  First, the parties submit the proposed terms of the settlement so that the court can make "a preliminary fairness evaluation," and if the parties move "for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined." *Id.*  Then, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and the date of the final fairness hearing." *Id.*  After the initial certification and notice to the class, the court then conducts a second fairness hearing before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Regarding class certification, the parties' stipulation that the class should be certified is not sufficient; instead the court "must pay undiluted, even heightened attention to class certification requirements." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (internal quotations marks omitted). *But see* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:28 ("Rule 23 requirements more readily satisfied for settlement classes") (4th ed. 2002) ("Since *Amchem*, approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled." (collecting cases)).  Regarding notice to the class, the court must ensure that the class members

/////

4

1   "receive 'the best notice that is practicable under the circumstances.'"  *Wal-Mart Stores, Inc. v.*

2   *Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2558 (2011) (quoting Fed. R. Civ. P. 23(c)(2)(B)).

3   III.    DISCUSSION

4           A.    Class Certification

5                   A party seeking to certify a class must demonstrate that it has met the requirements

6   of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Amchem*, 521 U.S. at 614; *Ellis*

7   *v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).  Although the parties in this

8   case have stipulated that a class exists for purposes of settlement, the court must nevertheless

9   undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing.

10  *West v. Circle K Stores*, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 12, 2006).

11                  Under Rule 23(a), before certifying a class, this court must be satisfied that:

12              (1) the class is so numerous that joinder of all members is
                impracticable (the "numerosity" requirement);

13              (2) there are questions of law or fact common to the class (the
14              "commonality" requirement);

15              (3) the claims or defenses of representative parties are typical of the
                claims or defenses of the class (the "typicality" requirement); and

16              (4) the representative parties will fairly and adequately protect the
                interests of the class (the "adequacy of representation" inquiry).
17

18  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Intel*

19  *Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)); *accord* Fed. R. Civ. P. 23(a).

20                  The court must also determine whether the proposed class satisfies Rule 23(b)(3),

21  on which plaintiffs rely in this case.  To meet the requirements of this subdivision of the rule, the

22  court must find that "'questions of law or fact common to class members predominate over any

23  questions affecting only individual members, and that a class action is superior to other available

24  methods for fairly and effectively adjudicating the controversy.'"  *Dukes*, 131 S. Ct. at 2558

25  (quoting Fed. R. Civ. P. 23(b)(3)).  "The matters pertinent to these findings include: (A) the class

26  members' interests in individually controlling the prosecution or defense of separate actions;

27  [and] (B) the extent and nature of any litigation concerning the controversy already begun by or

28  against class members . . . ."  Fed. R. Civ. P. 23(b)(3)(A)–(B).

1         1.     <u>Numerosity</u>

2          Although there is no absolute numerical threshold for numerosity, courts have

3 approved classes of, for example, thirty-nine, sixty-four, and seventy-one plaintiffs. *Murillo v.*

4 *Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669

5 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810). Here, the parties

6 agree the class includes ninety-four employees. (ECF No. 24 at 1, 8.) The numerosity

7 requirement has been met.

8         2.     <u>Commonality</u>

9          To satisfy the commonality requirement, plaintiffs must do more than show "that

10 they have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. The

11 claims must depend upon a common contention that "must be of such a nature that it is capable of

12 classwide resolution—which means that determination of its truth or falsity will resolve an issue

13 that is central to the validity of each one of those claims in one stroke." *Id.* It is not so much that

14 the class raises common questions: what is necessary is "the capacity of a classwide proceeding to

15 generate common answers . . . ." *Id.* "[T]he merits of the class members' substantive claims are

16 often highly relevant when determining whether to certify a class." *Ellis*, 657 F.3d at 981.

17          Here, given the nature of the class claims and definition of the class, it appears the

18 commonality requirement has been satisfied. Not only does the class raise common questions,

19 but the class action may generate class-wide answers to the central issues: whether class members

20 were entitled to overtime pay, and if so, whether they were properly paid under the California

21 Labor Code; whether class members were properly paid under the Fair Labor Standards Act

22 (FLSA); whether class members were entitled to a third meal break; whether class members are

23 entitled to statutory penalties; and whether defendants provided plaintiffs with accurate pay

24 records. (ECF No. 24-1 at 8–9.) *See Ching v. Siemens Indus., Inc.*, No. 11-4838, 2013 WL

25 6200190, at *4 (N.D. Cal. Nov. 27, 2013) (finding the commonality requirement satisfied where

26 "the issues facing the class ar[o]se from common questions involving [the] [d]efendant's

27 calculation and payment of wages and overtime"); *Dilts v. Penske Logistics, LLC*, 267 F.R.D.

28 625, 633 (S.D. Cal. 2010) (finding the commonality requirement satisfied where the plaintiffs

1    identified "common factual questions, such as whether [the] [d]efendants' policies deprived the

2    . . . class members of meal periods, rest periods, overtime pay, and reimbursement . . . and

3    common legal questions, such as [the] [d]efendants' obligations under [various sections of the]

4    California Labor Code and California's Unfair Competition law").

5                        3.      Typicality

6                        "'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'"

7    because both act "'as guideposts for determining whether maintenance of a class action is

8    economical and whether the named plaintiff's claim and the class claims are so interrelated that

9    the interests of the class members will be fairly and adequately represented in their absence.'"

10   *Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13

11   (1982)).  A court resolves the typicality inquiry by considering "whether other members have the

12   same or similar injury, whether the action is based on conduct which is not unique to the named

13   plaintiffs, and whether other class members have been injured by the same course of conduct."

14   *Ellis*, 657 F.3d at 984 (citation and internal quotation marks omitted); *Morales v. Stevco, Inc.*, No.

15   09-00704, 2011 WL 5511767, at *6 (E.D. Cal. Nov. 10, 2011).  In this case, it appears the class

16   members suffered similar injuries when defendants allegedly failed to comply with California and

17   Federal laws.  This satisfies the typicality inquiry.  *See Murillo*, 266 F.R.D. at 475.

18                        4.      Adequacy of Representation

19                        To determine whether the named plaintiffs will protect the interests of the class,

20   the court must explore two factors: (1) whether the named plaintiffs and counsel have any

21   conflicts of interest with the class as a whole, and (2) whether the named plaintiffs and counsel

22   vigorously pursued the action on behalf of the class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

23   1020 (9th Cir. 1998); *see also Clersceri v. Beach City Investigation Servs., Inc.*, No. 10-3873,

24   2011 WL 320998, at *6 (C.D. Cal. Jan. 27, 2011) ("(1) the class representative must not have

25   interests antagonistic to the unnamed class members, and (2) the representative must be able to

26   prosecute the action 'vigorously through qualified counsel.'" (citation omitted)).

27                        Nothing in the papers presently before the court suggests the representative

28   plaintiffs have any conflicts of interest with the other class members.  Because plaintiffs' class-

1   wide claims appear to be "completely aligned with [that] of the class," *Collins*, 274 F.R.D. at 301,

2   the court concludes at this stage there is no conflict.

3          With respect to the second factor, "[a]lthough there are no fixed standards by

4   which 'vigor' can be assayed, considerations include competency of counsel and, in the context

5   of a settlement-only class, an assessment of the rationale for not pursuing further litigation."

6   *Hanlon*, 150 F.3d at 1021.  In addition, a named plaintiff will be deemed to be adequate "as long

7   as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent

8   decisions based upon [the plaintiff's] lawyers' advice . . . ." *Kaplan v. Pomerantz*, 131 F.R.D.

9   118, 121–22 (N.D. Ill. 1990).

10          Plaintiffs' counsel has described his experience in class-action cases and,

11   specifically, in class-action cases involving employment related matters.  (*See* Barnett Decl. ¶¶ 18

12   –19, 25–30, ECF No. 24-2.)  Plaintiffs' counsel also describes the effort expended on this action

13   thus far, which includes investigation into the strengths and weaknesses of the class claims and

14   participation in private mediation with a highly experienced mediator.  (*See id.* ¶¶ 8–15.)

15   Additionally, plaintiffs have participated in the litigation process, *see, e.g., id.* ¶ 9, which is a

16   relevant factor to determining the adequacy of representation.  *See Sepulveda v. Wal–Mart Stores,*

17   *Inc.*, 237 F.R.D. 229, 244 (C.D. Cal. 2006).

18          At this preliminary stage of the settlement-approval process, the court finds the

19   class representatives and counsel to be adequate.  *See Falcon*, 457 U.S. at 160 (observing that

20   finding of adequacy "particularly during the period before any notice is sent to members of the

21   class 'is inherently tentative'").

22                    5.    Predominance

23          "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

24   sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

25   Although it is similar to Rule 23(a)'s commonality requirement, it is more demanding.  *Id.* at 624.

26   To determine whether common questions predominate, the court must consider "the relationship

27   between the common and individual issues" by looking at the questions that preexist any

28   settlement.  *Hanlon*, 150 F.3d at 1022.  In addition, the predominance inquiry focuses on the

1  "notion that adjudication of common issues will help achieve judicial economy."  *In re Wells*

2  *Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (citation and internal

3  quotation marks omitted).

4       As noted above, with the major issues in this case stemming from defendants'

5  alleged uniform failure to properly calculate wages and overtime; failure to account for meal

6  periods and rest periods; failure to provide reimbursements; and little suggestion there will be

7  individual issues apart from calculating individual damages, the class action will promote

8  efficiency by allowing a number of claims to be litigated simultaneously.  (*See* Barnett Decl. ¶ 19,

9  ECF No. 24-2.)  At this stage, the predominance requirement has been met.

10       6.   Superiority

11       In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class

12  members' interests in pursuing separate actions individually, any litigation already in progress

13  involving the same controversy, the desirability of concentrating the litigation in one forum, and

14  potential difficulties in managing the class action—although the last two considerations are not

15  relevant in the settlement context.  *Schiller v. David's Bridal, Inc.*, No. 10-0616, 2012 WL

16  2117001, at *10 (E.D. Cal. June 11, 2012) ("In the context of settlement, however, the third and

17  fourth factors are rendered moot and are not relevant . . . because the point is that there will be no

18  trial . . . ." (citing *Amchem*, 521 U.S. at 620)).

19       Here, if class members were to sue individually, each would bring essentially the

20  same claims for relatively small sums and yet might have to expend substantial resources to cover

21  litigation costs.  (*See* Barnett Decl. ¶ 20, ECF No. 24-2.)  The court is not aware of, and the

22  parties have not cited any other similar litigation.  Thus, a class action is superior to individual

23  resolution of the claims.

24       In sum, because the court finds Rule 23(a)'s and Rule 23(b)(3)'s requirements are

25  met, conditional certification of the class is appropriate.  Accordingly, for settlement purposes

26  only, the court certifies the following class:

27  /////

28  /////

9

> [T]he non-exempt employees of Defendant Universal Ag Services who worked at the facilities operated by Defendant Penny Newman in California at any point in time from August 10, 2010 to January 15, 2015, and who do not properly and timely opt out of the Settlement Class by having requested exclusion.

(Ex. A ¶ 19, ECF No. 24-3.)

     B.   <u>Preliminary Fairness Determination</u>

        1.   <u>Proposed Settlement Agreement</u>

The Settlement Agreement is entered into between the named plaintiffs, Jesus Palacios, Jose Palacios, Alejandro Herrera Aguilar, Edgar Torres, and Sabas Medina, and defendants, Penny Newman and Universal Ag.  (ECF No. 24-3 at 1.)  The parties intend the $600,000 settlement amount to "resolve all claims of the Settlement Class . . . ."  (*Id.*)  That amount does not include the employer's share of payroll taxes, which Universal Ag will pay separately.  (*Id.* ¶ 21.)  From the Settlement Amount, the claims administrator will pay $150,000 to class counsel for attorneys' fees and an amount not exceeding $10,000 for costs.  (*Id.* ¶ 34.1.)  Each named plaintiff will receive $10,000 as an enhancement payment in addition to the share of the Net Settlement amount.  (*Id.* ¶ 34.2.)  The claims administrator will receive an amount not exceeding $30,000.  (*Id.* ¶ 34.3.)

The Net Settlement Fund is defined as the amount remaining after payments are made to the named plaintiffs, claims administrator, and class counsel for attorneys' fees and costs.  (*Id.* ¶ 13.)  As noted above, the Net Settlement Amount will be distributed as follows: 20 percent will be used to settle class claims for unpaid wages and 80 percent will be used to pay for class claims for statutory penalties and interest.  (*Id.* ¶ 35.1(a)–(b).)  From the 80 percent, $10,000 will be allocated to settle the PAGA claims.  (*Id.* ¶ 35.1(c).)  From that amount, $7,500 will be paid to the California Workforce Development Agency.  (*Id.* ¶ 35.2.)  At the hearing on the instant motion, the parties confirmed that the residual amount, $2,500, will be added to the Net Settlement Amount and be available to the class.

The claims administrator will calculate the amount of individual settlement awards based on a formula to be determined by plaintiffs' counsel, which will account for the number of

10

weeks that each class member worked, the individual's rate of pay, and whether the amount is subject to an offset.  (*Id.* ¶ 35.3.)  An offset is the amount by which the award will be reduced to reflect payments Penny Newman previously made to that particular person.  (*Id.* ¶ 22.)  After all the distributions, any remaining amount will be distributed to CCLS as a *cy pres* recipient.  (*Id.* ¶ 42.)

Finally, the Settlement Agreement provides, "The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith . . . ."  (*Id.* ¶ 57.)

2.     Discussion

"At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval,'" *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)), such that there is a "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux*, 690 F.2d at 621 n.3.  The court considers:

- the strength of plaintiff's case;
- the risk, expense, complexity, and likely duration of further litigation;
- the risk of maintaining class action status throughout the trial;
- the amount offered in settlement;
- the extent of discovery completed and the stage of the proceedings;
- the experience and views of counsel;
- the presence of a governmental participant; and
- the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.  This "initial evaluation can be made on the basis of information [contained in] briefs, motions, or informal presentations by parties," MANUAL FOR COMPLEX LITIGATION, *supra*, § 21.632, and "the Court need not review the settlement in detail at this time," *Durham v. Cont'l Cent. Credit, Inc.*, No. 07-1763, 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing NEWBERG, *supra*, § 11.25).  Instead, "[g]reat weight is accorded the recommendation of counsel, who are most closely acquainted with the facts of the underlying

11

1  litigation." *Gribble v. Cool Transports, Inc.*, No. 06-04863, 2008 WL 5281665, at *9 (C.D. Cal.

2  2008) (citation and internal quotation marks omitted).  However, the court must also consider

3  whether the settlement is the result of collusion.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

4  1290, 1291 (9th Cir. 1992).  Where "settlements are negotiated at arm's length," "a presumption

5  of fairness applies . . . ."  *Gribble*, 2008 WL 5281665, at *9.

6        The court has reviewed the proposed settlement's terms and moving papers and—

7  considered together with counsel's representations at the hearing—the court finds that the

8  settlement terms are, at this time, "within the range of possible approval."  *Murillo*, 266 F.R.D. at

9  479.

10        As explained above, the parties participated in a full-day mediation overseen by an

11  experienced mediator, Jeffrey A. Ross, on January 15, 2015.  (Barnett Decl. ¶ 9, ECF No. 24-2.)

12  The parties' counsel and all the named plaintiffs and defendants were present at the mediation and

13  actively participated in it.  (*Id.*)  Before the mediation, the parties communicated extensively

14  about settlement proposals and offers to compromise.  (*Id.* ¶ 10.)  Participation in mediation

15  "tends to support the conclusion that the settlement process was not collusive."  *Villegas v. J.P.*

16  *Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)

17  (citation omitted).

18        While no formal discovery was exchanged, defendants voluntarily produced all

19  time and pay records for the entire putative class.  (Barnett Decl. ¶ 13, ECF No. 24-2.)  With

20  regard to the extent of discovery, "'formal discovery is not a necessary ticket to the bargaining

21  table.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re*

22  *Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  The information defendants

23  provided allowed plaintiffs to conduct other investigations and to conclude that the settlement

24  amount is "extremely favorable . . . ."  (Barnett Decl. ¶¶ 13–16, ECF No. 24-2.)

25        At this stage of the case and based on the record before the court, there is no

26  indication of collusiveness between the parties; no indication of preferential treatment between

27  plaintiffs and class members; and the agreement appears to be within the range of possible

28  approval.  As "the [c]ourt need not perform a full fairness analysis at this time because it will be

1   done in connection with the [final] fairness hearing," *Nieves v. Cmty. Choice Health Plan of*

2   *Westchester, Inc.*, No. 08-321, 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012), this is sufficient

3   for preliminary approval.

4         The parties are advised, however, the court in its discretion does not plan to

5   maintain jurisdiction to enforce the terms of the parties' settlement agreements.  *Kokkonen v.*

6   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *cf. Collins v. Thompson*, 8 F.3d 657,

7   659 (9th Cir. 1993).  Unless there is some independent basis for federal jurisdiction, enforcement

8   of the agreements is for the state courts.  *Kokkonen*, 511 U.S. at 382.

9                     3.   Court's Reservations

10        The court's preliminary approval is not without reservations.  As noted, when a

11  settlement is reached prior to formal class certification, "there is an even greater potential for a

12  breach of fiduciary duty owed the class during settlement."  *Bluetooth,* 654 F.3d at 946.

13  "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of

14  collusion or other conflicts of interest . . . before securing the court's approval as

15  fair."  *Id.* (citations omitted).  That the parties came to terms during private mediation with an

16  experienced mediator, although "a factor weighing in favor of a finding of non-collusiveness," is

17  "not on its own dispositive."  *Id.* at 948, 939 (reversing district court's approval of a class

18  settlement even though settlement was reached during a "formal mediation session, overseen by a

19  retired California Court of Appeal Justice").  Signs of collusion include: (1) "when counsel

20  receive a disproportionate distribution of the settlement," *id.* at 947; (2) when the settlement

21  agreement contains a "clear sailing" arrangement, as here, in which defendant agrees not to

22  contest the class counsel's application for attorneys' fees, "which carries [with it] 'the potential of

23  enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel

24  accepting an unfair settlement on behalf of the class,'" *id.* (quoting *Lobatz v. U.S. W. Cellular of*

25  *Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)); and (3) when, also as here, the class

26  representative receives an enhancement payment that might be higher than payments unnamed

27  class members stand to receive from the settlement, *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th

28  Cir. 2003).

1

2                                  a.        Attorneys' Fees

3                  Under the Settlement Agreement, attorneys' fees will be calculated at 25 percent

4     of the Settlement Amount, amounting to $150,000.  (ECF No. 24-1 at 2.)  At the same time, the

5     agreement provides that if the court does not approve that amount, "then Class Counsel shall be

6     paid from the common fund the amount of attorneys' fees approved by the Court."  (ECF No. 24-

7     3 ¶ 34.1.)  In addition, at the hearing, the parties confirmed that any money not awarded as

8     attorneys' fees will become part of the Net Settlement Amount to be available to the class and the

9     settlement will remain binding.

10                 Because 25 percent is within the accepted range set forth by the Ninth Circuit, the

11    fee amount proposed is approved preliminarily.  *Morales*, 2011 WL 5511767, at *12 (when

12    applying the percentage-of-recovery method, "[t]he typical range of acceptable attorneys' fees in

13    the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the

14    benchmark." citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  However, the court

15    is concerned with the "clear sailing" provision of the agreement.  *Bluetooth*, 654 F.3d at 942, 947.

16    According to the agreement, "Defendants and their attorneys agree not to oppose any application

17    for attorneys' fees or costs by Class Counsel, so long as any such application is consistent with

18    the provisions of this Settlement Agreement."  (ECF No. 24-3 ¶ 39.)  For purposes of the final

19    approval, the parties must provide the court with information sufficient to allow the court to

20    determine the reasonableness of the agreed fee, for example by providing information with which

21    the court may compare it to a lodestar award.

22                                 b.        Enhancement Award

23                 Under the Settlement Agreement, the named plaintiffs will each receive $10,000 as

24    enhancement payments in addition to the amount each will be entitled to as a class member.

25    (ECF No. 24-3 ¶ 34.2.)  At the hearing, the parties confirmed that any money the court does not

26    award as enhancement payments will become part of the Net Settlement Amount to be available

27    to the class and the settlement will remain binding.

28    /////

                                                    14

1

2          "Enhancements for class representatives are not to be given

3    routinely." *Morales,* 2011 WL 5511767, at *12.  "Indeed, '[i]f class representatives expect

4    routinely to receive special awards in addition to their share of the recovery, they may be tempted

5    to accept suboptimal settlements at the expense of the class members whose interests they are

6    appointed to guard.'" *Staton,* 327 F.3d at 975 (alteration in original) (quoting *Weseley v. Spear,*

7    *Leeds & Kellogg*, 711 F.Supp. 713, 720 (E.D.N.Y. 1989)).  To assess whether an incentive

8    payment is excessive, district courts balance "the number of named plaintiffs receiving incentive

9    payments, the proportion of the payments relative to the settlement amount, and the size of each

10   payment." *Id.* at 977.

11         At this stage, given the low bar plaintiffs must surpass, the enhancement award is

12   preliminarily approved.  However, the approval is not without reservation in light of the 8.33

13   percent of the Settlement Amount plaintiffs intend to seek.  *See, e.g.*, *Monterrubio v. Best Buy*

14   *Stores, L.P.*, 291 F.R.D. 443, 462–63 (E.D. Cal. 2013) (finding proposed enhancement award of

15   1.8 percent of the total settlement amount inappropriate and awarding an incentive fee of

16   approximately .62 percent of the total settlement for the purpose of preliminary approval).  Final

17   approval of any enhancement award will be subject to an evaluation of relevant factors

18   "'includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to

19   which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff

20   expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace

21   retaliation.'" *Staton*, 327 F.3d at 977 (alteration in original) (quoting *Cook v. Niedert*, 142 F.3d

22   1004, 1016 (7th Cir. 1998)).  Plaintiffs must each provide a detailed declaration describing his or

23   her current employment status, any risks he or she faced as a class representative, specific

24   activities he or she performed as class representatives, and the amount of time he or she spent on

25   each activity.

26              c.      <u>Negotiations</u>

27         While plaintiffs' counsel report the settlement was reached after a full-day

28   mediation session and after counsel's investigations and estimated exposure to liability, the court

                                          15

1   will require more detailed evidence concerning the mediation and negotiations of the proposed

2   settlement agreements.  The court requires information relating to the parties' mediation to assess

3   the reasonableness of the settlement and "understand the nature of the negotiations."  MANUAL

4   FOR COMPLEX LITIGATION, *supra*, § 21.6.  Accordingly, the parties must provide

5   information exchanged during their private mediation including, but not limited to, mediation

6   statements and any relevant communications during the parties' negotiations.  To the extent the

7   parties are concerned that disclosure of this information might "reveal confidential information

8   obtained by plaintiffs through mediation" (*id.* at 10 n.4), they may request that the court review

9   this information *in camera* while complying with the Local Rules governing such a request.

10  *See Bowling v. Pfizer, Inc.*, 143 F.R.D. 138, 140 (S.D. Ohio 1992) (ordering "an *in*

11  *camera* disclosure" of confidential information concerning "all past settlements made by the

12  Defendants involving the Bjork–Shiley c/c heart valve"); MANUAL FOR

13  COMPLEX LITIGATION, *supra,* § 21.631 ("A common practice is to receive information . . . *in*

14  *camera*.").[1]

15                     d.     Notice

16              Provision 45.3(b) of the Settlement Agreement contemplates that if certain class

17  members do not receive a notice packet because for instance, the notice packets are returned as

18  undeliverable, those members will not receive a payment, yet they will release their claims.  (ECF

19  No. 24-3 ¶ 45.3(b).)  This aspect of the Settlement Agreement may not sufficiently protect absent

20  class members' due process rights.  *See Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 413 (N.D. Cal.

21  Mar. 25, 2013) (finding similar "aspect of the Settlement Agreement does not give due process to

22  Class Members who are known not to have received notice of the Settlement Agreement, and yet

23  are bound by its terms").  The parties should be prepared to explain how the notice provision

24  complies with the fairness requirement.

25  /////

26  /////

27

28      [1]  For the parties' convenience, this order's conclusion sets forth the manner by which the
    parties may submit documents for *in camera* review by the court.

1    C.    Proposed *Cy Pres* Plan

2         The parties have designated CCLS to receive any residual funds that are not

3    distributed through the class action settlement as a *cy pres* award.  (ECF No. 24-3 ¶ 42.)  Because

4    most class action settlements result in unclaimed funds, a plan is required for distributing those

5    funds.  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  The

6    alternatives available are *cy pres* distribution, escheat to the government, and reversion to the

7    defendants or the identified class members.  *Six Mexican Workers*, 904 F.2d at 1307 n.4 (A fourth

8    option is the pro rata distribution of the funds to located class members . . . .  We express no view

9    as to the propriety of this distribution method." (internal citation omitted)).

10        *Cy pres* distribution allows the distribution of unclaimed funds to indirectly benefit

11   the entire class. *Id.* at 1305. This method requires the *cy pres* award to qualify as "the next best

12   distribution" to giving the funds directly to the class members.  *Dennis v. Kellogg Co.*, 697 F.3d

13   858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate *cy

14   pres* beneficiary[,]" there must be "a driving nexus between the plaintiff class and the *cy

15   pres* beneficiary."  *Dennis*, 697 F.3d at 865 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th

16   Cir. 2011)). The choice of distribution options should be guided by the objective of the

17   underlying statute and the interests of the class members. *Six Mexican Workers,* 904 F.2d at 1307.

18   A *cy pres* distribution is an abuse of discretion if there is "no reasonable certainty" that any class

19   member would benefit from it.  *Dennis*, 697 F.3d at 865 (quoting *Six Mexican Workers*, 904 F.2d

20   at 1308).

21        Here, plaintiffs state CCLS is a proper recipient "because of its lengthy track

22   record" of providing legal services "to the indigent and working poor in the Central Valley."

23   (ECF No. 24-1 at 18.)  For purposes of preliminary approval, CCLS appears to be an appropriate

24   entity to receive the unclaimed funds.  Therefore, the court preliminarily approves the *cy

25   pres* provision, but will require counsel at the final hearing to address the "reasonable certainty"

26   standard set forth above in more detail.

27   /////

28   /////

17

D.    Summation

The court reiterates final approval will not issue without resolution of the court's concerns.  Because the court finds that the settlement terms are, at this time, "within the range of possible approval," *Murillo*, 266 F.R.D. at 479, the court grants preliminary approval of the proposed settlement.

E.    Proposed Class Notification

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B).  The notice must state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that a class member may enter an appearance through an attorney if the member so desires;
- that the court will exclude from the class any member who requests exclusion;
- the time and manner for requesting exclusion; and
- the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The court has reviewed the proposed notices (ECF No. 24-4, Ex. A1; ECF No. 24-5, Ex. A2; ECF No. 24-6, Ex. A3) and finds they conform with due process and the applicable Rule.  *See* FED. R. CIV. P. 23(c)(2)(B).  The proposed notice adequately describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and will provide specific and sufficient information regarding the date, time, and place of the final approval hearing.  *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126–27 (E.D. Cal. 2009).  The notice is appropriate.

/////

/////

F.     Class Counsel

In light of counsel's experience in wage and hour class action litigation, the court appoints California Rural Legal Assistance Foundation and the Law Offices of John E. Hill as class counsel.

G.     Final Approval Hearing Schedule

The court adopts the following proposed deadlines as set forth, in part, in the proposed order submitted in support of the instant motion (ECF No. 24-8):

| Date | Event |
| --- | --- |
| 5 Days[2] | Deadline for defendants to produce the list of all potential class members to the claims administrator, along with personal information such as: (1) full name; (2) last known residence address; (3) telephone number; (4) social security or individual taxpayer identification number; (5) the amount, if any, a class member previously received from defendants in a purported settlement. |
| 14 Days | Deadline for the claims administrator to mail notice packets to class members |
| 75 Days | Deadline for opting out of the settlement class and for objecting to the settlement |
| December 18, 2015 | Deadline for class counsel to file and serve motion for final approval of settlement |
| January 15, 2016 at 10:00 a.m. in Courtroom 3 | Final Approval Hearing |

/////
/////
/////
/////

---

[2]   The number of days as used herein refers to the number of days after the date on which this order is filed.

19

1    IV. <u>CONCLUSION</u>

2            For the foregoing reasons, plaintiff's motion for preliminary approval of class

3    action settlement is GRANTED as follows:

4        1.  Conditional certification of the following class is granted:

5            [T]he non-exempt employees of Defendant Universal Ag Services
             who worked at the facilities operated by Defendant Penny Newman
6            in California at any point in time from August 10, 2010 to January
             15, 2015, and who do not properly and timely opt out of the
7            Settlement Class by having requested exclusion.

8        2.  Plaintiffs Jesus Palacios, Jose Palacios, Alejandro Herrera Aguilar, Edgar Torres,

9            and Sabas Medina are appointed as class representatives for the class.

10       3.  Gilardi & Co., LLC is appointed as claims administrator.

11       4.  California Rural Legal Assistance Foundation and the Law Offices of John E. Hill

12           are appointed as class counsel.

13       5.  Preliminary approval of the settlement is granted.

14       6.  Approval of the proposed notice is granted.

15       7.  The proposed final hearing schedule is adopted as set forth above, with the

16           Final Approval Hearing set for January 15, 2016 at 10:00 a.m. in

17           Courtroom 3.

18       8.  Class counsel and plaintiff shall file a motion for attorney's fees, costs, and

19           class representative payment on or before the date the class administrator

20           mails the class packets to class members.

21           To the extent a party wishes to submit documents for *in camera* review to facilitate

22   the final fairness determination under Rule 23, those submissions should be filed in the following

23   manner.  The party shall submit the documents "for conventional filing or lodging" in accordance

24   with E.D. Cal. Local Rule 130(b), and notice of the *in camera* submission shall be served on all

25   /////

26   /////

27   /////

28
                                            20

1  parties.  The notice and conventional filing or lodging shall indicate conspicuously that the

2  submission is for *in camera* review only.

3                IT IS SO ORDERED.

4  DATED:  July 2, 2015.

7                UNITED STATES DISTRICT JUDGE

21